532 A.2d 1343 (1987)
In the Matter of Myra DeLOATCH, Appellant.
No. 86-982.
District of Columbia Court of Appeals.
Argued September 15, 1987.
Decided November 5, 1987.
James Klein, Public Defender Service, with whom Sharon Styles, Public Defender Service, was on brief, for appellant.
Janet Maher, Staff Atty., St. Elizabeths Hosp., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., were on brief, for appellee.
Before MACK, FERREN and TERRY, Associate Judges.
PER CURIAM:
This appeal arises under the District of Columbia Hospitalization of the Mentally Ill Act, (D.C.Code §§ 21-501 to -592 (1981)) (popularly known as "the Ervin Act"). Appellant assigns as error the trial court's failure to provide her an opportunity to contest her emergency hospitalization within 24 hours of her request for a hearing. We hold that the trial court's failure to conduct the requested hearing within 24 hours violated the Act and that the trial court's ultimate determination of probable cause to continue emergency hospitalization of appellant did not cure this violation.

I.
On May 18, 1986, a police officer brought appellant to St. Elizabeths Hospital and made application for her emergency hospitalization pursuant to D.C.Code § 21-521 (1981). A hospital psychiatrist examined her and concluded that she showed symptoms of mental illness warranting hospitalization. The following day the hospital petitioned the Superior Court to continue the hospitalization "for emergency observation and diagnosis, for a period not to exceed seven (7) days." D.C.Code § 21-523 (1981). The trial court, upon ex parte examination *1344 of the papers, ordered the extension and informed appellant of her right to a hearing under § 21-525.
On May 21, at about 1:00 p.m., appellant exercised her right to a hearing, and the hearing was scheduled for 2:00 p.m. on the following day. Shortly after 2:00 p.m. on May 22, Judge Block, who was to hear appellant's case, realized that he would be unable to conduct all of the business on his calendar, and as a result, appellant's case along with one other was certified to Judge Greene. Judge Greene completed one hearing and at 4:20 p.m. called appellant's case. After noting the late hour and other obligations, Judge Greene indicated that he would be unable to hear the case. Seeking to enforce the 24-hour hearing rule, appellant objected, moved to dismiss the petition and requested release. After consultation with Judge Urbina, the Presiding Judge of the Family Division, Judge Greene denied the motion to dismiss and continued the case until the following morning. On May 23, 1986, Judge Greene held the § 21-525 hearing and found probable cause to believe appellant to be mentally ill and a danger to herself if not immediately hospitalized. Shortly thereafter, appellant left the hospital on unauthorized leave.

II.
As a preliminary matter, we must determine whether this case is moot since appellant is no longer confined at St. Elizabeths Hospital.[1] A case may be moot if it no longer presents a continuing controversy. However, even if a controversy is no longer continuing, a case will not be moot if it is "capable of repetition yet evading review." United States v. Edwards, 430 A.2d 1321, 1324 n. 2 (D.C.1981) (en banc), cert. denied, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). As this court noted in In re Morris, 482 A.2d 369, 372 (D.C. 1984), "[m]any cases have found challenges to commitment procedures by discharged mental patients to fall within this [exception to the mootness] doctrine."
Likewise, this case is "capable of repetition yet evading review." There is no indication that appellant's mental condition is such that emergency incarceration would not again occur or that procedures in Superior Court are so changed that a hearing within the required 24 hours would now be assured. In addition, the issue of the proper construction of § 21-525 is "continuing and of public importance." Friend v. United States, 128 U.S.App.D.C. 323, 325, 388 F.2d 579, 581 (1967). Accordingly, we hold that appellant's case is not moot.

III.
Section 21-525 provides that a person whose continued hospitalization for emergency observation and diagnosis is ordered may request a hearing. Further, the statute provides: "[t]he hearing shall be held within 24 hours after receipt of the request" (emphasis added). Notwithstanding the requirement of the statute, the trial court did not schedule appellant's case to be heard within the 24-hour time period, and the hearing was not conducted until approximately 45 hours after appellant's request.
The hospital suggests that the statute does not say what it appears to say; that is, since § 21-525 does not provide for a remedy for noncompliance with the 24-hour provision, the statute should be read as directory rather than mandatory.[2] We find no merit in this argument.
The language of § 21-525 is plain and clear; upon request, a hearing shall be held within 24 hours. As this court recently pointed out, use of the word "shall" creates "a duty, not an option." Dupont *1345 Circle Citizens Association v. District of Columbia Board of Zoning Adjustment, 530 A.2d 1163, 1170 (D.C.1987). Congress could have required that a hearing be held within 24 hours where feasible, but it did not.
Similarly, the statute reveals that Congress provided for an extension of time when the 24-hour period ends on a nonbusiness day. See D.C.Code § 21-526 (1981). Congress did not provide for an extension of time under any other circumstances, including court congestion. If it had wished to do so, it could have.
The Ervin Act is "a comprehensive statutory scheme," In re Lomax, 386 A.2d 1185, 1188 (D.C.1978) (en banc), drafted by Congress to provide for the often necessary emergency hospitalization of the mentally ill or those believed to be mentally ill while at the same time protecting their constitutional rights. The Ervin Act evolved out of a "profound congressional concern for the liberties of the mentally ill." Covington v. Harris, 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1969). The Act evinces the intention of Congress to permit emergency confinement for only short and precisely circumscribed durations. Interpretation of § 21-525 to allow rather than require a hearing within 24 hours would do serious damage to the statutory scheme.

IV.
The hospital also suggests that the trial court's ultimate determination that probable cause existed to continue detention cured any error of noncompliance with the statutory time limitation. In support of this proposition, the hospital cites to In re Morris, supra, and Williams v. Meredith, 407 A.2d 569 (D.C.1979). Neither case is controlling here.
In Williams, appellants were hospitalized upon applications of Mental Health Commission physicians. D.C.Code § 21-521 requires that the physician applying for emergency hospitalization must be the "physician of the person in question." This court held that Commission physicians did not satisfy this requirement but that the subsequent judicial determination of the need for further involuntary hospitalization in the form of a § 21-525 probable cause hearing cured the legal imperfection of the original detention. 407 A.2d at 574.
In Morris, appellant challenged his initial detention, attacking the validity of the application for emergency hospitalization. In conducting its ex parte review of the petition for emergency hospitalization, the trial court relied in part on what it later agreed to be an improper application. Citing Williams v. Meredith, supra, however, the trial court ruled that the impropriety could be cured by holding a § 21-525 hearing. Appellant waived his right to this hearing. This court affirmed the action of the trial court finding that there was "no reasonable basis upon which to distinguish" Williams. Morris, supra, 482 A.2d at 373. Further, the court pointed out that appellant could not avoid the application of Williams simply by waiving his § 21-525 hearing.
Unlike the instant case, however, neither Morris nor Williams involved the failure to meet a statutory deadline. Both involved minimal procedural deficiencies which did not significantly infringe upon the due process interests of the patients. Indeed, the court in Morris recognized this distinction, pointing out that "[a]ppellant does not claim that after his initial detention he was held without independent judicial review beyond the time limitations set forth by statute." Morris, supra, 482 A.2d at 373. That is precisely what happened to appellant, and a subsequent finding of probable cause cannot cure that defect.
Accordingly, we hold that the detention of Ms. DeLoatch past the 24 hours set by statute without providing her right to be heard was illegal, and the trial court's order of May 23, 1986 is therefore vacated. Further, we instruct the Superior Court that, in the future, if a requested § 21-525 hearing is not held within 24 hours, the detainee is to be released.
So ordered.
TERRY, Associate Judge, concurring:
I join without reservation in the opinion of the court. I add this short statement to *1346 explain why I believe this case presents an exception to the mootness doctrine, since I was the one who raised the issue at oral argument.
The only relief available to appellant De-Loatch on this appeal is a reversal or vacation of the order holding her in the hospital until formal commitment proceedings could be completed. The hospital states in its brief, however, that further commitment proceedings were not undertaken because DeLoatch left the hospital on unauthorized leave. In such a situation I would ordinarily be inclined to hold that a patient who "effectuated [her] own release by escaping from St. Elizabeths Hospital" had thereby mooted her appeal. Ragsdale v. Cameron, 117 U.S.App.D.C. 278, 279, 329 F.2d 233, 234 (1963). The court so held in Ragsdale and dismissed the appeal of a patient seeking his release by habeas corpus.
In the case at bar, however, I am satisfied that we may nevertheless consider the merits of the appeal under a well established exception to the mootness rule. That exception, classically stated in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), permits appellate review of "short term orders, capable of repetition, yet evading review. . . ." See also, e.g., In re Curry, 152 U.S.App.D.C. 220, 222-223, 470 F.2d 368, 370-371 (1972); Alton & So. Ry. v. International Ass'n of Machinists, 150 U.S.App.D.C. 36, 42-44, 463 F.2d 872, 878-880 (1972). Because I readily agree that the order from which this appeal is taken fits that description, I concur in the court's opinion.
NOTES
[1] The hospital did not develop this argument in its brief and did not press the issue in oral argument.
[2] The hospital's argument that a "statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision," citing Thomas v. Barry, 234 U.S.App.D.C. 378, 379 n. 5, 729 F.2d 1469, 1470 n. 5 (1984), quoting Fort Worth National Corp. v. FSLIC, 469 F.2d 47, 58 (5th Cir.1972) (emphasis in original), is not persuasive. Neither Thomas nor Fort Worth involved the deprivation of individual liberty.