# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2013

No. 11-51084

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

TERRENCE DEVONT MITCHELL,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Terrence Mitchell appeals the revocation of his conditional release under 18 U.S.C. § 4243(g), arguing that the district court erred by not *sua sponte* ordering a competency hearing at his § 4243(g) hearing; by denying his request for new counsel; and by revoking his conditional release on a finding that he was a substantial risk of bodily injury to others. We affirm.

No. 11-51084

I.

Congress enacted the Insanity Defense Reform Act of 1984 to establish an affirmative defense of insanity, a verdict of "not guilty only by reason of insanity," and a corresponding civil-commitment procedure under § 4243. *Shannon v. United States*, 512 U.S. 573, 577 (1994). After a verdict of not guilty only by reason of insanity, the defendant must prove, at a § 4243(c) hearing, "that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." § 4243(d).

The burden of proof depends on the underlying offense—the defendant must provide clear and convincing evidence if it was "an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage"[;] otherwise, the applicable burden is preponderance of the evidence. *Id.* If the defendant fails to meet the burden, the court shall commit him to the custody of the Attorney General under § 4243(e).

The length of a § 4243(e) commitment is indefinite, but if the director of the facility providing treatment determines the individual is no longer a risk, the court shall release him or hold a release hearing under § 4243(f). The defendant must show that his "release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." § 4243(f)(1). This hearing adopts the burden from the initial § 4243(c) hearing. § 4243(f).

Alternatively, the individual may present evidence that a "conditional" release, involving a "prescribed regimen of medical, psychiatric, or psychological care or treatment," would remove the risk. § 4243(f)(2). In that case, the court may order a conditional discharge and "order, as an explicit condition of release, that he comply with the prescribed regimen." § 4243(f)(2)(B).

A § 4243(f)(2) conditional release—like an initial § 4243(c) commitment—is not necessarily permanent; § 4243(g) allows for the revocation of a conditional

No. 11-51084

release. Where the court is given "probable cause to believe that the person has failed to comply with the prescribed regimen," he may be arrested, § 4243(g), after which there is a hearing to "determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply . . . his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.*

## II.

Mitchell was charged in 1996 with murder and was deemed legally competent after receiving treatment. At a bench trial before United States District Judge Walter Smith, Mitchell was found not guilty of second degree murder only by reason of insanity and was committed to the Attorney General's custody under § 4243(e).

In 2002, after finding Mitchell no longer to be a substantial risk to others if he followed a strict treatment regimen, the court conditionally released him, under § 4243(f)(2), to a residential mental health facility; in 2003, he was moved to an outpatient facility. In 2004, the government filed a motion to rescind the conditional discharge, and Mitchell was arrested and committed. The following year, a psychiatric report led the court to grant Mitchell a second conditional release to a residential treatment facility. In 2006, the court allowed him to relocate and use outpatient services.

The government filed a sealed motion in July 2011 to revoke Mitchell's conditional release under § 4243(g). Mitchell resisted the subsequent arrest, attacking the U.S. Marshals with a chain. Before his hearing, the court ordered a medical evaluation by Dr. Maureen Burrows, who diagnosed Mitchell with schizophrenic disorder, bipolar type with psychotic features, and adult anti-social behavior; determined he had a moderate to high risk of violence, along with a history of violence; that his most violent acts happened during psychosis,

No. 11-51084

which occurred when he did not take his medication; and that his paranoid delusions were person-specific. Burrows concluded that Mitchell was not in compliance with his treatment regimen and that releasing him under the current conditions would create a substantial risk of injury to another person or property.

At the revocation hearing in October 2011, the court admitted Burrows's report into evidence. Mitchell gave rambling and somewhat incoherent testimony. At the conclusion of the hearing, Mitchell's counsel admitted he had nothing to rebut the government's evidence. Mitchell then asked the court to remove his counsel; the court rejected that request.

Finding that Mitchell had failed to comply with the conditions of his release and that he posed a substantial risk of bodily injury to others, the court revoked the release and placed him back into the custody of the Attorney General. Upon Mitchell's timely appeal, we review the revocation on appeal from a final decision of a district court.[1]

III.

Mitchell argues that the district court erred in not *sua sponte* calling for a competency hearing at his § 4243(g) hearing. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."[2] Convict

---

[1] 28 U.S.C. § 1291*; see United States v. Boggs*, 68 F.3d 467 (5th Cir. 1995) (per curiam); *see also Sealed Appellee v. Sealed Appellant*, 665 F.3d 620, 623 (5th Cir. 2011) (exercising jurisdiction over an analogous appeal regarding a revocation of conditional discharge under § 4246(f)); *United States v. Jackson*, 19 F.3d 1003 (5th Cir. 1994) (exercising jurisdiction over an appeal of a § 4243(e) commitment); *United States v. Crape*, 314 F. App'x 199 (11th Cir. 2008) (exercising jurisdiction over an appeal of a revocation of conditional release under § 4243(g)).

[2] *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also* 18 U.S.C. § 4241(a); *Cooper v.* (continued...)

No. 11-51084

ing a legally incompetent person violates due process,[3] and competency require-ments have been applied to various parts of the adversarial process.[4]  In *United States v. Ruston*, 565 F.3d 892, 901 (5th Cir. 2009), this court found that the initial § 4243(c) hearing required competency.  Although we have never imposed a competency requirement on a § 4243(g) hearing, Mitchell asks that we extend *Ruston* to impose such a requirement here.  Even assuming *arguendo* that com-petency is required, the district court did not err by failing to call *sua sponte* for a competency hearing.

        We review for abuse of discretion a decision not to hold a competency hear-ing.  *Flores-Martinez*, 677 F.3d at 706.  This court recognizes that the trial court is in the best position to decide whether a competency hearing is necessary, and "[w]hether reasonable cause exist[ed] to put the court on notice that the defen-dant might be mentally incompetent is left to the sound discretion of the district court."[5]

        A court must *sua sponte* call for a competency inquiry "if there is reasona-ble cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Flores-Martinez*, 677 F.3d at 706 (quot-

---

        [2] (...continued)
*Oklahoma*, 517 U.S. 348, 354 (1996).

        [3] *United States v. Flores-Martinez*, 677 F.3d 699, 705 (5th Cir. 2012) (quoting *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).

        [4] *See, e.g., Godinez v. Moran*, 509 U.S. 389, 396 (1993) (holding that pleading guilty or waiving a right to counsel requires competency); *United States v. Garcia*, 276 F. App'x 409, 410 (5th Cir. 2008) (per curiam) (applying the competency requirement to the sentencing phase).

        [5] *United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995) (internal quotations omitted); *see also Flores-Martinez*, 677 F.3d at 706; *Ruston*, 565 F.3d at 901; *United States v. Messervey*, 317 F.3d 457, 463 (5th Cir. 2002).

No. 11-51084

ing 18 U.S.C. § 4241(a)). If, by a preponderance of the evidence, the defendant is found to be incompetent, "the court shall commit the defendant to the custody of the Attorney General," and he is held until he has the capacity to proceed. § 4241(d).[6]

There is no specific threshold or "quantum of evidence" that requires the district court to order a competency hearing. *Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977). Instead, this court considers three factors: "(1) the existence of a history of irrational behavior, (2) the defendant's demeanor at trial, and (3) prior medical opinion on competency." *Ruston*, 565 F.3d at 902. Significantly, "the presence or absence of mental illness or brain disorder is not dispositive" as to competency. *Mata v. Johnson*, 210 F.3d 324, 329 n.2 (5th Cir. 2000). Mitchell attempts to piggyback on the court's finding of error in *Ruston*, but "the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Ruston*, 565 F.3d at 902 (quoting *Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir. 2007)).

First, based on *Pate*, we consider Mitchell's history of irrational behavior and mental illness. In *Pate*, the Court noted that despite the defendant's mental alertness at trial, the district court erred by "ignoring the uncontradicted testimony of [defendant's] history of pronounced irrational behavior. While [his] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Pate*, 383 U.S. at 385–86.

Unlike the court in *Pate*, the district court here did not ignore Mitchell's

---

[6] Alternatively, if "it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." § 4241(d). Section 4246(d) requires commitment if "the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."

No. 11-51084

mental-health history. The court was well aware of his tumultuous past—Judge Walter Smith presided over Mitchell's numerous related appearances and hearings. Considering both the court's awareness and the fact that Mitchell's mental illness is not dispositive of incompetence, the court did not abuse its discretion based solely on Mitchell's medical history.[7]

The next factor is demeanor at trial. Despite Mitchell's illogical and rambling statements, this case is different from *Ruston*, in which the defendant "did not demonstrate a rational as well as factual understanding of the proceedings against him." *Ruston*, 565 F.3d at 903 (internal quotations omitted). Mitchell's testimony instead illustrated his basic awareness and understanding of the proceedings—he testified that he did not pose a threat to person or property and was stable and able to take care of himself. His behavior indicated a man with mental health issues, but he did not show a total lack of understanding.[8]

In light of the evidence and all three factors viewed objectively, *Ruston*, 565 F.3d at 901–02, and considering that "[t]he district court is in the best position to determine the need for a competency hearing,"[9] the district court did not abuse its discretion in not calling for a competency hearing.

---

[7] *See McCoy v. Lynaugh*, 874 F.2d 954, 961 (5th Cir. 1989); *see also United States v. Lang*, 447 F. App'x 552, 552 (5th Cir. 2011) (per curiam); *Thompson v. Johnson*, 7 F. Supp. 2d 848, 860 (S.D. Tex. 1998) ("[A] history of mental illness and/or attempts at suicide do not *per se* establish a defendant's incompetency to stand trial."); *Aldridge v. Thaler*, Civ. Ac. No. H-05-608, 2010 WL 1050335, at \*7 (S.D. Tex. Mar. 17, 2010) ("Mental illness and incompetence, nonetheless, are not necessarily coexistent conditions. The court must shift through the indicia of mental illness to see if its pervasiveness and manifestation degrades the core concerns of the competency inquiry: a defendant's factual and rational understanding of his trial and his rational ability to consult with counsel.") (citation omitted).

[8] The final factor—prior competency examinations—is of little if any relevance. There is no record of a competency examination more recent than the late 1990s, and reports almost fifteen years old have little or no relevance in this inquiry. *See Drope*, 420 U.S. at 181 (recognizing that competency can change from the commencement to the conclusion of trial); *Ruston*, 565 F.3d at 903 (refusing to rely on a six-month-old competency finding).

[9] *Ruston*, 565 F.3d at 901 (quoting *United States v. Alden*, 527 F.3d 653, 659 (7th Cir. 2008)).

No. 11-51084

IV.

Rulings on Sixth Amendment claims are reviewed *de novo*, and if there is no violation, a "trial court's refusal to appoint substitute counsel is reviewed for an abuse of discretion." *United States v. Simpson*, 645 F.3d 300, 307 (5th Cir.), *cert. denied*, 132 S. Ct. 541 (2011). The Sixth Amendment guarantees the right to counsel, but "indigent defendants have no right to appointed counsel of their choice." *United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007). The court is constitutionally required to provide substitute counsel only if there is a substantial conflict or problem affecting the ability to represent the defendant—"a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which led to an apparently unjust verdict."[10]

Mitchell alleges both a complete breakdown in communication because of his incompetency and a conflict because his attorney failed to rebut the government's evidence. Mitchell does not demonstrate how substitute counsel could have performed any differently under the circumstances. He fails to raise a valid Sixth Amendment complaint, and the district court did not abuse its discretion in refusing to replace counsel. *See id.*

V.

Mitchell seeks to reverse the revocation, disputing the underlying findings that he was not in compliance with his treatment regimen and that the noncompliance created a substantial risk of bodily injury to others. He contests the burden of proof as well as the court's findings of fact.

---

[10] *United States v. Romero-Trejo*, 476 F. App'x 790, 791 (5th Cir. 2012) (per curiam) (alteration remarks removed) (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)).

No. 11-51084

A.

Although probable cause of non-compliance with treatment is required to arrest a conditionally-released person under § 4243(g), the statute is silent as to the burden for the revocation hearing:

> The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

§ 4243(g). This silence is notable compared with the expressly established burdens for other § 4243 hearings.[11] We review issues of statutory interpretation *de novo*. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009).

First, we do not need to decide here which party carries the burden in a § 4243(g) hearing, because the evidence is sufficient even if, as Mitchell argues, it falls to the government.[12] In addition, Mitchell disputes the proper burden but fails to argue what level of convincing force this court should require; he merely notes the statutory silence and lack of precedent on the issue.[13] Even under the

---

[11] In the initial § 4243(c) hearing, to avoid commitment, "a person found not guilty only by reason of insanity of an offense involving bodily injury" must prove "by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another." § 4243(d). The statute requires the same showing for the court to grant a discharge, conditional or otherwise. § 4243(f).

[12] *See United States v. Ambers*, 360 F. App'x 39, 43 (11th Cir. 2010) (per curiam) (acknowledging the ambiguity in § 4243(g) and declining to determine which party bears the burden); *see also United States v. Logsdon*, 450 F. App'x 704, 707 (10th Cir. 2011) (declining to decide which party bears the burden in a § 4243(g) hearing).

[13] *See Sealed Appellee*, 665 F.3d at 622–23 (discussing § 4246(f)'s silence as to burden and noting the absence of controlling caselaw for similar revocation proceedings, including § 4243(g)).

high burden of clear and convincing evidence,[14] Mitchell's claim fails.


B.

We review the finding of dangerousness under § 4243 for clear error.[15] "Clear-error review only requires a factual finding to be plausible in light of the record as a whole."[16] There are two findings necessary for a § 4243(g) revocation: that the individual failed to comply with his treatment regimen and that his continued release would create a substantial risk of bodily injury to another.[17] Assuming *arguendo* that the government must prove both by clear and convincing evidence, the district court's findings and conclusion to revoke conditional release under § 4243(g) were not clearly erroneous.

Considering the record as a whole, it was plausible for the court to find, by clear and convincing evidence, that Mitchell was not complying with his treatment. The government attached to its motion the report of U.S. Probation Officer Tiffani Dabney, summarizing her visit to Mitchell's house in June 2011. Mitchell showed her a prescription bottle from January that still contained pills but should have been empty; he said that he did not like taking the medicine because of the side effects. The report also noted he had told his therapist that he no longer wished to participate in his prescribed treatment. In addition to Dabney's report, Burrows's report concluded Mitchell had not been taking his medicine while on release and was not currently taking it after his arrest.

Mitchell offers nothing to contest the government's evidence, other than

---

[14] "Preponderance means that it is more likely than not. Clear and convincing is a higher standard and requires a high probability of success." *In re Briscoe Enter., Ltd., II,* 994 F.2d 1160, 1164 (5th Cir. 1993) (internal quotations omitted).

[15] *See Jackson*, 19 F.3d at 1006; *see also Ambers*, 360 F. App'x at 42.

[16] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (per curiam) (citing *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010)).

[17] *Sealed Appellee*, 665 F.3d at 623 (interpreting the analogous section 4246(f) revocation statute); *see also United States v. Sealed Appellant 1*, 169 F. App'x 415, 416 (same).

merely concluding it is insufficient. Mitchell's attorney expressly stated that he

> [did] not have any evidence that would rebut the government's allegations that Mr. Mitchell failed to comply with the prescribed regimen of medication. That's based on reviewing the letter from Tiffan[i] Dabney [and] Dr. Burrow's report talking to Mr. Mitchell, talking to his mother and reviewing the letters that Mr. Mitchell has written me.

It was also not clear error for the district court to find that Mitchell's release created a substantial risk that he would cause bodily injury to another person. Considering the record as a whole, it was plausible for the court to find, by clear and convincing evidence, that Mitchell posed a danger to others.

The Dabney report noted Mitchell's increased agitation and aggressiveness. Dabney was concerned about Mitchell's therapist's conclusion that Mitchell was a danger to the community, especially to women. Burrows also reported Mitchell's violent history, particularly during unmedicated periods. Similarly to Dabney, Burrows reported that Mitchell's paranoid delusions were people-specific. Burrows explicitly concluded that releasing Mitchell would create a substantial risk of bodily injury to others.

In July 2011, the Magistrate Judge, who signed Mitchell's arrest warrant, found that the government had established by clear and convincing evidence that Mitchell was a danger to the community. The Magistrate Judge recounted Mitchell's attack on the Marshals and his "previous dangerous encounters with Phillips County Sheriffs Deputies in connection with terroristic threatening charges." Again, Mitchell offers nothing to rebut that evidence, stating only that "[t]his finding is totally unsupported by the evidence." The district court was familiar with the record and Mitchell's history, and the court committed no clear error in its findings underlying the conclusion to revoke the conditional release.

The order of revocation is AFFIRMED.